**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CARAIL WEEKS (M-09289),** | **)** | |
| | **)** | |
| **Petitioner,** | **)** | |
| | **)** | **No. 19 C 6833** |
| **v.** | **)** | |
| | **)** | **Hon. John Z. Lee** |
| **DAVID GOMEZ,** | **)** | |
| | **)** | |
| **Respondent.** | **)** | |

**MEMORANDUM OPINION AND ORDER**

A stray bullet from a drive-by shooting killed fourteen-year-old Starkeshia Reed while she was getting ready for school on the morning of March 3, 2006. Three years later, a Cook County jury convicted Petitioner Carail Weeks of first-degree murder and attempted murder in connection with the shooting. Now a prisoner at Stateville Correctional Center, Weeks brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. In support, he asserts several instances of ineffective assistance of trial and appellate counsel, prosecutorial misconduct in cross-examination and closing arguments, and error by the trial court in admitting a witness's prior consistent statement. For the reasons set forth below, the Court denies the § 2254 petition and declines to issue a certificate of appealability.

# I.    Background[1]

## A.    The Shooting

On the morning of March 3, 2006, Juarez Merchant and Charles Labon were selling drugs on a street corner in Chicago when they noticed a green car making several trips around the block. *People v. Weeks*, No. 1-09-3109, 2011 WL 10068613, at *1 (Ill. App. Ct. Sept. 26, 2011) ("*Weeks I*"). Merchant recognized the car because he had seen his ex-girlfriend and Weeks riding in it throughout the neighborhood in the preceding weeks. *Id*.

According to both Merchant's and Labon's trial testimony, on the car's third pass, Weeks got out, pointed a firearm at them, and fired ten to fifteen shots. *See id*. at *1–2. The two men fled, avoiding the gunfire, but one of the bullets struck through a window of a nearby home and killed fourteen-year-old Starkeshia Reed. *Id*. A neighborhood resident described seeing a two-door green car with a temporary license plate leaving the scene of the shooting. *Id*. at *2.

Shortly thereafter, Chicago police arrested Weeks in connection with the murder, and Weeks was charged with one count of first-degree murder and two counts of attempted murder. *See id*. at *1. The case went to trial in 2008, but the trial resulted in a hung jury. *Id*.

---

[1]    The facts and procedural background are drawn from the state appellate court decisions in Weeks's direct and postconviction appeals, supplemented by the state court record. The facts taken from the state appellate court decisions are presumptively correct, and Weeks has not attempted to introduce clear and convincing evidence to rebut this presumption. *See Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)).

**B.     The Trial**

Weeks's second trial was held in September 2009.  Report of Proceedings at 1211, *People v. Weeks*, No. 2006 CR 0823701 (Cir. Ct. Cook Cnty.), ECF No. 16-13 ("Tr.").  During the *voir dire*, defense counsel asked whether any jurors "would have some concerns about [Weeks's] guilt or innocence" if Weeks did not take the stand in his own defense.   *Weeks I*, 2011 WL 10068613, at *1.  A member of the *venire*, who was later selected for the jury, raised her hand, and the following exchange ensued:

| | |
|---|---|
| Juror: | I would have to just say I don't think it would prejudice me, but I would really wonder why somebody didn't want to take the stand in defense of himself, yes. |
| The Court: | Would your answer be any different if I told you that the law states that if the defendant does not testify, you must not consider that in any way in arriving at your verdict? |
| Juror: | Well, I would take the information and try to make a fair judgment, but I to have honest [sic], I would wonder why somebody wouldn't want to, yes. |
| Defense counsel: | Do you have any concerns with the . . . legal principle that the defendant is in fact presumed innocent until the State proves [its] case beyond a reasonable doubt? |

* * * *

| | |
|---|---|
| Juror: | No, I don't disagree with it. |
| Defense counsel: | You don't disagree with the principle that the State has that burden? |
| Juror: | No, I don't disagree. |

3

*Id.* (citation omitted). Defense counsel did not object to her selection to serve on the jury. *See id.*

The State's case mostly rested on testimony from the surviving victims—Merchant and Labon, both of whom identified Weeks as the shooter—and other witnesses, including an acquaintance of Weeks, James Kline. *Id.* at *2. Kline testified that, the day after the shooting, Weeks mentioned to him that Weeks's own height and weight resembled those in a description of the shooter reported in a newspaper article. *See id.* Kline denied at trial that Weeks admitted being present at the shooting, but Kline acknowledged signing a statement, taken by a prosecutor, that Weeks had made such an admission.[2] *Id.* The State also presented evidence that Kline had testified before the grand jury to the same effect.[3] *Id.*

The prosecution also introduced the murder weapon, which a police officer had discovered approximately fourteen months after the shooting while conducting a routine patrol of a housing development. *See* Tr. at 1258–59. The State linked the weapon to Weeks by its serial number, through the testimony of a store clerk who had sold Weeks the gun several months before the shooting. *Weeks I*, 2011 WL

---

[2]     According to the written statement, Weeks told Kline that Weeks "was with folks when the shooting of the little girl happened"; that Weeks was in "a green two-door Cavalier with a yellow temp plate at the shooting"; and that "they used the AK47 chopper in that shooting, but they were shooting at dude and them [sic], not the little girl." Tr. at 249–50.

[3]     Kline's grand jury testimony was that Weeks told Kline that Weeks "was there" at the scene of the shooting; that Weeks was with "folks" in the same car as described in Kline's written statement; that Weeks "had went over there, and [Weeks] said first folks lost control of the gun"; that the gun used was an "AK chopper"; and that "it was fucked up." Trial Tr. at 261–63.

10068613, at \*3. The government also called a firearms-identification expert, who testified that the fourteen spent cartridge cases and certain projectiles recovered from the scene of the shooting were fired from the recovered weapon. *Id*. The expert testified that his opinion was accurate both "to a reasonable degree of scientific certainty" and "to the exclusion of all other firearms." Tr. at 1451–53. After brief testimony from the police officer to whom Merchant and Labon originally had identified Weeks as the shooter, the State rested its case. *Weeks I*, 2011 WL 10068613, at \*3.

The defense began its case with testimony from George Grzeca, one of Weeks's former attorneys, who had interviewed Labon at the Cook County Jail (where Labon was being held on unrelated charges) while investigating Weeks's case. *Id*. Grzeca testified that, during the interview, Labon denied having seen Weeks fire the shots, which contradicted his testimony on the stand and the information he had provided to the police. *See id*.; Tr. at 390:12–19. Labon agreed on cross-examination that he had denied having seen Weeks fire the shots in his interview with Grzeca and had signed an affidavit to that effect, but said he did so because Grzeca had promised to help Labon with Labon's own case. *Weeks I*, 2011 WL 10068613, at \*2.

After Grzeca, Weeks introduced alibi testimony from his sister, Stormy Westfield, placing Weeks with her at the apartment of a relative, Belinda Thompson, on the morning of the shooting. *See id*. at \*4; Tr. at 1643–44, 1650–51. Westfield claimed that she and Weeks went shopping that morning to prepare for Westfield to

5

move to an apartment in Thompson's building. *Weeks I*, 2011 WL 10068613, at *4. The building's landlord testified to confirm that such a move occurred. *See id.*

The defense also called Utica Collins, an acquaintance of Weeks, who owned a green two-door car. *See id.* at *3. Collins testified that, approximately two hours after the shooting, she had taken the car to a repair shop, and that no one had driven the car earlier that morning. *See id.* And Collins's sister testified that she saw the green car parked in the owner's driveway on the morning of the shooting. *Id.* Collins denied that Weeks had ever been in the car, but the State impeached her with her testimony to the contrary from the first trial. *Id.*

During closing arguments, the prosecutor attempted to discount Labon's interview with Grzeca by suggesting that Labon had lied to Grzeca out of "self-preservation":

> "Let's just look at it with common sense. [Labon] is in Cook County Jail. He is being asked by the defendant's attorney are you going to identify my client. He is essentially asking him are you going to be a witness.
>
> Charles Labon is in Cook County Jail. What do you think of witnesses in Cook County Jail? When Charles Labon says I am not going to identify [the defendant], I didn't see him, that's not a lie. It is self-preservation. It is self-preservation.
>
> Yeah, I am going to be a witness, I am going to come in, I am going to identify your client. Now I am going to go back to my cell. It is self-preservation.

*Id.* at *4.

During her closing argument, defense counsel noted that Merchant also was incarcerated at the jail along with Labon, but that Merchant did not recant his

6

identification of Weeks, contradicting the State's theory. To this, the prosecutor responded:

> You know the difference, though? [Merchant], he was never interviewed by [the defendant's] lawyer in the jail. He was never asked questions by an attorney representing [the defendant].
>
> What was the important information from Mr. Grzeca? He was going to inform his client, [the defendant], of the progress of the investigation. He was going to tell him what the witnesses were saying.
>
> You don't think Charles Labon was concerned about that information getting back to [the defendant]? You don't think he knew that the information that he provided to [the defendant's] lawyer was going to get back to [the defendant]?
>
> Can anybody possibly blame Charles Labon for telling [the defendant's] lawyer that he wasn't going to identify him, that he didn't remember or whatever the nonsense was? Of course you can't blame him for that. His own safety, self-preservation, was his main focus.

*Id.* Defense counsel did not object to these statements. *Id.* at *5.

The jury found Weeks guilty on all counts. *Id.* The court sentenced Weeks to a total of 150 years: sixty years for first-degree murder; a consecutive sixty-year term for personally discharging the firearm proximately causing the death; and two thirty-year terms for the attempted murder convictions to be served concurrently with each other but consecutively to the sixty-year terms. Trial Ct. R. at 126, *Weeks*, 2006 CR 0823701 (Cir. Ct. Cook Cnty. Oct. 28, 2009), ECF No. 16-11.

## C. Direct Appeal

Weeks raised three main issues on direct appeal: (1) ineffective assistance of counsel based on his trial counsel's failure to seek to strike from the *venire* the juror

who had equivocated about a defendant who chooses not to testify; (2) prejudicial error by the court in admitting Merchant's testimony that he had identified Weeks as the shooter before the grand jury; and (3) improper closing argument by the prosecutors suggesting that the reason Labon had recanted his identification of Weeks in the interview with Grzeca was that Labon feared Weeks. *See Weeks I*, 2011 WL 10068613, at *5–7.

The appellate court affirmed the conviction. *Id.* at *7. The Supreme Court of Illinois denied Weeks's petition for leave to appeal ("PLA"), which raised the same claims. *See People v. Weeks*, 968 N.E.2d 88 (Table) (Ill. 2012), *cert. denied sub nom. Weeks v. Illinois*, 568 U.S. 876 (2012); *see generally* PLA at 3–22, *Weeks*, No. 1-09-3109 (Ill. Nov. 21, 2011), ECF No. 16-5.

## D. Postconviction Proceedings

In 2013, Weeks filed a *pro se* petition for postconviction relief, and two supplements with the benefit of assigned counsel. *People v. Weeks*, No. 1-17-0579, slip op. at 2 (Ill. App. Ct. Apr. 26, 2019) (unpublished order) ("*Weeks II*"), ECF No. 16-8. He claimed ineffective assistance of trial counsel for: (1) failing to call two witnesses to undercut the State's suggestion that Labon had recanted his identification of Weeks out of fear of retaliation; (2) failing to object to the firearms expert's testimony about his level of certainty that Weeks's gun was the murder weapon; (3) failing to present a 911 call identifying another person as potentially connected to the shooting; and (4) failing to inform Weeks accurately of the sentencing ranges of the offenses, causing Weeks to reject a plea offer. *See id.* at 2–3.

Weeks also asserted claims of ineffectiveness of appellate counsel for: (1) failing to argue trial counsel's ineffectiveness for failing to call the recantation witnesses; (2) failing to argue trial counsel's ineffectiveness for failing to object to the firearms expert's testimony; (3) failing to argue prosecutorial misconduct in the cross-examination of Weeks's prior attorney about not having called Thompson at trial; (4) failing to argue trial court error in violation of Illinois Supreme Court Rule 431(b); and (5) failing to argue prosecutorial misconduct in seeking to impeach Kline through his prior inconsistent statement concerning what Weeks had told him about the shooting. *See id.* at 2.

The trial court dismissed the petition as to all claims except for the claim concerning whether trial counsel failed to properly inform Weeks of the sentencing ranges, for which the court ordered an evidentiary hearing. *Id.* at 3. At the hearing, the court heard testimony from Weeks, his two attorneys from the first trial, and a prosecutor from the first trial. *See id.* Weeks testified that, during jury deliberations at his first trial, one of his attorneys asked if he "would be willing to take 20 years," and that he said no "because he believed the sentencing range was 20 to 60 years and he did not understand that he could receive a life sentence." *Id.* The prosecutor testified, however, that the State never made, nor did defense counsel seek, a plea offer. *See id.* Both defense attorneys testified to the same effect and added that, although they had discussed with Weeks whether to seek a plea offer and advised him of the potential sentencing ranges, Weeks did not want to plead guilty. *Id.* The court credited the attorneys' testimony over Weeks's, and denied the petition. *Id.* at

4. The Supreme Court of Illinois denied Weeks's second PLA. *People v. Weeks*, No. 1-17-0759 (Ill. Sept. 25, 2019).

## II.   Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner in custody pursuant to the judgment of a state court must make two showings to obtain a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   First, the petitioner must establish "that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a).   Second, he must show that the state postconviction court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)–(2).

As to the second point, "[a] state court decision is 'contrary to' Supreme Court precedent if it either did not apply the proper legal rule or did apply the correct rule but reached the opposite result from the Supreme Court on materially indistinguishable facts." *Wilbur v. Hepp*, 16 F.4th 1232, 1248 (7th Cir. 2021).   To be an "unreasonable" application of Supreme Court precedent, the state court's decision must be "objectively unreasonable, not merely wrong."   *Id.* (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam)).   Finally, if the relevant state court decision on the merits does not provide an explanation for its reasoning, the Court "look[s] through the unexplained decision to the last related state-court decision that does

10

provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quotation marks omitted).[4]

## III.  Analysis

### A.  Ineffective Assistance of Counsel

Weeks first contends that he is in custody in violation of the Sixth Amendment's right to effective assistance of counsel as defined by *Strickland v. Washington*, 466 U.S. 668 (1984), based on numerous alleged errors committed by both trial and appellate counsel.  Under *Strickland*, Weeks must show that: (1) counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Failure to prove either prong is fatal to this claim. *See Winfield v. Dorethy*, 956 F.3d 442, 452 (7th Cir. 2020).

Weeks charges trial counsel with the following errors: (1) not moving to strike during *voir dire* the juror who said she would question why a defendant would not testify in his own defense; (2) failing to advise Weeks of the sentencing ranges for the offenses; (3) failing to present at trial a 911 call from an anonymous source; and (4) failing to object to the firearms expert's statement that the bullets recovered from the scene came from Weeks's gun "to the exclusion of all other firearms."  In addition,

---

[4]      The Supreme Court's recent decision in *Brown v. Davenport* clarified that, in order to obtain habeas relief, a § 2254 petitioner must not only satisfy the requirements of AEDPA, but also must demonstrate that she suffered "actual prejudice" from the state court's errors. 142 S. Ct. 1510, 1524 (2022) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Because Weeks has not met AEDPA's bar with respect to any of his claims, the Court need not reach the question of actual prejudice here.

Weeks asserts that his appellate counsel erred in (1) failing to argue ineffective assistance based on the admission of the firearms expert's testimony; (2) failing to argue that trial counsel's failure to call witnesses supporting Labon's recantation of his identification of Weeks constituted ineffective assistance; (3) failing to argue ineffective assistance based on the unchallenged admission of Kline's written statement; and (4) failing to argue that trial counsel violated Illinois Supreme Court Rule 413(b) during the *voir dire*. The Court takes the claims in turn.

### 1. Failure to Move to Strike Juror

Weeks argues that trial counsel was ineffective for not asking the trial court to strike the juror who had stated during *voir dire* that she would wonder why a criminal defendant would not testify at trial. On direct appeal, the Illinois Appellate Court concluded that Weeks failed to satisfy the prejudice prong as to this claim. *Weeks I*, 2011 WL 10068613, at *5–6. The court concluded that there was "no direct evidence" that the juror's "alleged bias actually infected" the jury's deliberations. *Id.* at *6.

The record supports that view. The juror said she "d[id not] think [a defendant's choice not to testify] would prejudice her," that she "would . . . try to make a fair judgment," and that she accepted the principle that a defendant is presumed innocent until the government proves its case beyond a reasonable doubt. *Id.* at *1. Moreover, the judge instructed the jurors not to consider "in any way" the defendant's choice not to testify. Tr. at 1796. Based on this evidence and the strength of the State's case—which included Merchant and Labon's "highly inculpatory accounts," the corroborative testimony of other witnesses concerning the car involved in the

shooting, "essentially unimpeached evidence tying [Weeks's] gun to the shooting," and Weeks's inculpatory statements to Kline—the Illinois Appellate Court reasonably concluded that a differently constituted jury would not have found in Weeks's favor. *Weeks I*, 2011 WL 10068613, at *6; *see Skilling v. United States*, 561 U.S. 358, 398–99 (2010) ("Jurors . . . need not enter the box with empty heads in order to determine the facts impartially. 'It is sufficient if the juror[s] can lay aside [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court.'" (quoting *Irwin v. Dowd*, 366 U.S. 717, 723 (1961)); *see also, e.g.*, *United States v. Boyd,* 86 F.3d 719, 722 (7th Cir. 1996) (no prejudice for improper use of peremptory challenge because there was no evidence it "produced a jury that was likely to convict an innocent person, or even a jury more likely to convict a guilty one"); *U.S. ex rel. Thomas v. Rednour*, No. 11-C-4927, 2013 WL 2251734, at *12–13 (N.D. Ill. May 22, 2013) (no prejudice where, although jurors equivocated during *voir dire*, they confirmed they would follow the law, and the State's evidence included two eyewitnesses who saw petitioner commit the shooting, another witness who saw the associated robbery, a confession by petitioner, and corroborating forensic evidence).

### 2. Failure to Inform Weeks of Sentencing Ranges

Weeks next argues that, because his trial counsel failed to advise him of the sentencing ranges for the offenses, he unintelligently rejected a plea offer of a twenty-year sentence. After an evidentiary hearing, the postconviction trial court disagreed and found that Week's counsel in fact had informed him of the sentencing ranges and that no plea offer had been made. In arriving that this conclusion, the court credited

13

his attorneys' testimony and gave Weeks's testimony little weight. *See Weeks II*, No. 1-17-1759, at 3.

Weeks points to no evidence, much less clear and convincing evidence, to suggest that the court's credibility determinations were misguided. He merely repeats the contentions he made at the evidentiary hearing—namely, that one of his attorneys during his first trial asked him if he would be willing to take twenty years. This Court cannot second-guess the state trial court's factual determination based on such weak circumstantial evidence. *See Gilbreath v. Winkleski*, 21 F.4th 965, 991 (7th Cir. 2021); *Villavicencio-Serna v. Jackson*, 999 F.3d 496, 500–01 (7th Cir. 2021) (federal courts reviewing § 2254 petitions "do not have a license to redetermine credibility of witnesses").

### 3. Failure to Introduce 911 Call

Weeks next claims that his trial counsel was ineffective for failing to introduce at trial the audio of a 911 call made on the morning of the shooting. In it, the caller reported that her boyfriend, "Jabari," had left her house with a gun and some friends, one of whom had had an argument with the brother of one of the victims.

The postconviction trial court rejected Weeks's claim because, "[e]ven presuming the truth or accuracy of [the statements in the call], they do nothing to exonerate or show or lead to the conclusion that [Weeks] was not otherwise involved" in the shooting. Tr. at 2019. The court further noted that "[the statements in the call] may speak to the involvement of some other person or persons, but they do not by their terms exclude or even tend to exclude [Weeks] in having been the person or

one of the persons involved in the murder of the victim." *Id.* This conclusion was reasonable. Merchant and Labon testified that Weeks got out of the passenger-side door of the green car, meaning that someone else had to be involved in the drive-by. *Weeks I,* 2011 WL 10068613, at *2. In other words, the call contained no information exculpating Weeks; only evidence inculpating another person. Accordingly, the postconviction trial court reasonably held that defense counsel's failure to introduce the 911 call was not prejudicial error. *See, e.g., Caffey v. Butler*, 802 F.3d 884, 897–900 (7th Cir. 2015) (no ineffective assistance in counsel's failure to present admissible out-of-court statements of accomplices concerning how to clean fingerprints and powder burns, where the statements implicated the accomplices but did not exculpate petitioner); *Ruhl v. Hardy*, 743 F.3d 1083, 1100 (7th Cir. 2014) (no ineffective assistance where defense counsel failed to introduce testimony suggesting that accomplice killed victim, because it was consistent with government's theory that petitioner helped accomplice).

### 4. Failure to Object to Firearms Expert's Testimony

Next, Weeks contends that his trial counsel was ineffective for failing to object to the testimony from the firearms expert that the recovered projectiles and cases came from Weeks's gun "to the exclusion of all other firearms." Weeks also takes issue with appellate counsel for not arguing that trial counsel was ineffective in this respect.

The state postconviction trial court noted that Weeks had conceded that the expert's conclusion was accurate "to a reasonable degree of scientific certainty" and

15

rejected Weeks's argument. Tr. at 2018. In its view, "the distinction between calling something a match to a reasonable degree of ballistic or scientific certainty and calling something a match to [the exclusion of] all other weapons in the world under the particular facts of this case" was not so great as to render trial or appellate counsel constitutionally deficient for failure to object to the testimony at trial or failure to raise the issue on appeal, respectively. *See id.*

In doing so, the postconviction court applied *Strickland* reasonably. To be sure, there is a meaningful difference between testifying "to a reasonable degree of scientific certainty" and "to the exclusion of all other firearms," and courts generally view statements to the latter effect with some suspicion. *See, e.g.*, *United States v. Ashburn*, 88 F. Supp. 3d 239, 248 (E.D.N.Y. 2015) (granting motion to bar firearms expert from testifying that his conclusions were accurate "to the exclusion of all other firearms"); *see generally United States v. Taylor*, 663 F. Supp. 2d 1170, 1174–79 (D.N.M. 2009) (collecting cases). But here, even assuming trial counsel had objected to the "exclusion of all other firearms" statement and the court had precluded it, it is not reasonably probable that the result of the proceeding would have been different, given the expert's other testimony and the strength of the State's overall case. *See, e.g.*, *Davidson v. Cunningham*, No. 16-CV-01125 (JFB), 2017 WL 3738560, at *19 (E.D.N.Y. Aug. 29, 2017) (no prejudice in admitting statements of ballistics expert because, even if the statements should have been excluded, eyewitness testimony and other evidence supported the government's case); *Melcher v. Holland*, No. 12–0544 WHO (PR), 2014 WL 31359, at *13 (N.D. Cal. Jan. 3, 2014) (concluding that, in light

of other evidence of petitioner's guilt, "the difference between 'practical certainty' and 'considered practically impossible' versus 'reasonable degree of certainty' or 'more likely than not'" in firearms identification testimony "would not tip the outcome").

Because Weeks's ineffectiveness claim concerning trial counsel fails, so too does his claim directed at appellate counsel. *See Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010) (failing to raise a meritless claim on appeal is not ineffective assistance) (citing *Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998)).

### 5. Failure to Call Witnesses in Support of Labon's Recantation

Next, Weeks claims that his appellate attorney was ineffective for not raising the failure of trial counsel to call two witnesses, Cynthia Brown and Steven Cary, at the second trial to corroborate Grzeca's testimony that he made no promises to Labon in exchange for Labon's recantation.[5] Neither the postconviction trial court nor the Illinois Appellate Court analyzed the claim in a reasoned decision. The postconviction trial court, however, rejected the claim insofar as it granted the State's motion to dismiss the postconviction petition and supplements, which included this claim. On appeal, the Illinois Appellate Court affirmed the judgment summarily without providing reasons. *Weeks II*, No. 1-17-1759, at 4.

That said, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*,

---

[5] In his postconviction petition, Weeks argued ineffectiveness of both trial and appellate counsel, but in his habeas petition Weeks argues only ineffectiveness of appellate counsel. The distinction is inconsequential, as both claims are meritless.

562 U.S. 86, 98 (2011). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* Based on this record, Weeks cannot meet this burden.

Calling Brown and Cary—two lawyers who worked with Grzeca—would have been, at best, loosely corroborative of Grzeca's own, more powerful testimony that he made Labon no promises in exchange for Labon's statement. Cary was not present during either of Grzeca's interviews with Labon, and Brown was present at only one of them; thus, even if Cary or Brown had testified, their basis of knowledge of what Grzeca told Labon was limited.

Of the three, Grzeca was the best witness to speak to whether he had promised anything to Labon in return, and he testified that he did not promise to help Labon with his unrelated case. Accordingly, it is not reasonably probable that, had defense counsel called Brown and Cary, the result of the proceeding would have been different. *See Snow v. Pfister*, 240 F. Supp. 3d 854, 875 (N.D. Ill. 2016) (trial counsel's failure to call additional impeachment witness, who would have corroborated defense witness's testimony that he had not implicated petitioner in a murder to prosecution witness, was not prejudicial because his testimony would have been cumulative), *aff'd*, 880 F.3d 857 (7th Cir. 2018); *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("[A] petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial"). And

because trial counsel was not ineffective, neither was appellate counsel. *See Johnson*, 624 F.3d at 793.

### 6. Failure to Object to Kline's Written Statement

Weeks also argues that his appellate counsel was ineffective for not raising trial counsel's failure to object to the admission of Kline's written statement that Weeks was present at the shooting. The State introduced Kline's written statement to rebut Kline's denial that Weeks had admitted his presence at the shooting.

The postconviction court concluded that the written statement was inadmissible under Illinois evidence law, but held that even if trial counsel had objected to the written statement, Weeks was not prejudiced because Kline's grand jury testimony to the same effect was properly admitted. That conclusion was reasonable, given Kline's properly admitted grand jury testimony and Merchant's and Labon's eyewitness testimony placing Weeks at the crime scene. *See Hodkiewicz v. Buesgen*, 998 F.3d 321, 328 (7th Cir. 2021) (state court reasonably applied *Strickland* in holding that petitioner suffered no prejudice from trial counsel's failure to make hearsay objection to police investigator's testimony, where petitioner had already "significantly undermined" the testimony, "and an added hearsay objection [was] not reasonably probable to have somehow tipped the scales toward a different result" (citation omitted)); *Busby v. Butler*, No. 14-C-9233, 2017 WL 8186997, at *7–8 (N.D. Ill. Dec. 15, 2017) (state court reasonably applied *Strickland* in concluding that, even if trial counsel had erred in not objecting to prosecutor's use of prior inconsistent statements from two witnesses, no *Strickland* prejudice arose because, among other

things, "ample substantive evidence" supported the conviction). And, again, because Weeks's claim of ineffectiveness of trial counsel fails, so too does his claim of ineffectiveness of appellate counsel. *See Johnson*, 624 F.3d at 793.

### 7. Failure to Argue that the *Voir Dire* Violated Illinois Supreme Court Rule 431

Weeks faults appellate counsel for failing to argue that the trial court violated Illinois Supreme Court Rule 431(b) when questioning the prospective jurors. Under that rule, "[t]he court shall ask each potential juror, individually or in a group, whether that juror *understands and accepts*" the following principles: the defendant is presumed innocent, the State bears the burden of proof beyond a reasonable doubt, the defendant is not required to offer evidence, and the defendant's choice not to testify cannot be held against him. ILL. SUP. CT. R. 431(b) (emphasis added). Weeks argues that the trial court erred by not asking whether the jurors "accepted" the principles.

The postconviction trial court rejected Weeks's claim, ruling orally that, at trial, the court "substantially complied" with the rule. The postconviction court explained that the principles "were properly and appropriately and substantially communicated to the venire persons throughout the venire process when you read and observe the entire jury venire process." Tr. at 2016–17.

As the Supreme Court has "repeatedly held," a state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Accordingly, this Court "cannot disagree with" the state court's

holding that the trial judge did not violate Rule 431. *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016).

As there was no error of state law, Weeks cannot establish that his appellate counsel's failure to raise this issue on appeal constituted ineffective assistance, and the state court's rejection of his claim to that effect was reasonable. *See Warren v. Baenen*, 712 F.3d 1090, 1105–06 (7th Cir. 2013).

## B. Prosecutorial Misconduct Claims

Weeks next asserts two instances of prosecutorial misconduct: (1) the government's allegedly improper cross-examination of Grzeca, and (2) the prosecution's statements during closing arguments that Labon had recanted his confession because he feared reprisal from Weeks.

Analysis of a prosecutorial misconduct claim proceeds "in two steps, asking (1) 'whether the prosecutor's comments were improper standing alone,' and if improper, (2) 'whether the remarks in the context of the whole record denied the defendant the right to a fair trial.'" *United States v. Chavez*, 12 F.4th 716, 728 (7th Cir. 2021) (quoting *United States v. Kelerchian*, 937 F.3d 895, 916 (7th Cir. 2019)). In other words, Weeks "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (emphases omitted) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Neither of Weeks's claims meets this bar.

21

### 1.     Cross-Examination of Grzeca

Weeks claims that the prosecutor improperly cross-examined Grzeca about his failure to call Thompson at the first trial.[6]  Specifically, the prosecutor asked Grzeca whether, with respect to the first trial, "Belinda Thompson [was] ever a witness for you in any way, shape, or form?"  Tr. at 1609.  Defense counsel objected, the judge sustained the objection, and Grzeca did not answer.  *See id.*

The postconviction trial court dismissed this claim without expressly addressing it.  Weeks therefore must show that the state court had "no reasonable basis" for the dismissal.  *Harrington*, 562 U.S. at 98.  He cannot make this showing.

Even if the question was improper, there was little risk of prejudice from the question.  When "the jury is properly instructed that the burden of proof belongs to the government and that the defendant has no burden to present any evidence," courts are generally "skeptical of arguments that a prosecutor's comments on a defendant's failure to produce evidence improperly shift the burden of proof to the defense[,] . . . . provided that the comments do not implicate or 'tax' the defendant's right not to testify."  *United States v. Roux*, 715 F.3d 1019, 1031 (7th Cir. 2013) (citations omitted) (collecting cases).  As to the comments at issue, the judge sustained defense counsel's objection and later instructed the jurors to "disregard questions . . . to which objections were sustained."  Tr. at 1792.  Other safeguards included the prosecutor's reminder during closing argument that "[the defense doesn't] have to put

---

[6]     Weeks also claims that this cross-examination contravened the work-product privilege, but such a claim is a matter of state law, *see* ILL. R. EVID. 502, and is not cognizable on habeas review.  *See Powell v. Fuchs*, 4 F.4th 541, 548 (7th Cir. 2021).

on a single piece of evidence or a single witness in a trial," *id.* at 1770, and defense counsel's similar reminder that the defendant "has no burden of proof." *Id.* at 1761. Moreover, the judge, in his final jury charge, instructed that the defendant was presumed innocent, that the State bore the burden of proof, and that the defendant was not required to prove his innocence. *See id.* at 1795–96. Finally, the prosecutor's question to Grzeca about Thompson's absence from the first trial had nothing to do with whether Weeks himself testified at the trial. Accordingly, the questioning of Grzeca did not cause Weeks undue prejudice, and this claim lacks merit.

### 2. Closing Remarks About Labon's Recantation

Weeks also characterizes as prosecutorial misconduct the government's statement during closing arguments that the reason Labon had told Grzeca that Labon did not see Weeks fire any shots was because Labon feared reprisal from Weeks. The state appellate court concluded that Weeks forfeited this claim on direct appeal by not objecting to the closing argument or raising the claim in his motion for a new trial. This is correct.

In order to preserve a claim for federal habeas review, a petitioner must "fairly present" it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Failure to do so results in procedural default. *See id.* Procedural default also occurs if the state court rejects a federal claim based on a state procedural rule "that is both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816,

23

819 (7th Cir. 2017) (quotation marks omitted); *see also Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016).

That said, a procedural default "may be excused . . . where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Thomas*, 822 F.3d at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception requires a showing of actual innocence. *See Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013).

Here, Weeks failed to preserve his claim by not objecting at trial or raising the claim in a motion for a new trial. This was a violation of Illinois's rules of criminal procedure, *see* ILL. SUP. CT. R. 615, which constitutes an independent and adequate state ground for procedural default. *See Miranda v. Leibach,* 394 F.3d 984, 993–97 (7th Cir. 2005) (discussing this rule at length); *U.S. ex rel. Johnson v. Chambers*, No. 05-C-2475, 2006 WL 1594025, at *5 (N.D. Ill. June 7, 2006) (petitioner procedurally defaulted his claim of improper prosecutorial closing argument where the state appellate court concluded that he failed to object to it at trial or raise it in a posttrial motion); *U.S. ex rel. Boyce v. Dobucki*, 993 F. Supp. 652, 656–57 (N.D. Ill. 1998) (same).

Weeks argues that the procedural default should be excused under the "cause and prejudice" theory, because his trial counsel was ineffective for not objecting to the closing arguments or raising the issue in his motion for a new trial, and because

the prosecutor's suggestion resulted in actual prejudice. This argument is unpersuasive.

As an initial matter, an assertion of ineffective assistance of counsel to excuse a default must itself be properly preserved in the state courts—something Weeks failed to do. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Karr v. Sevier*, 29 F.4th 873, 886 (7th Cir. 2022) ("By failing to raise ineffective assistance of appellate counsel before the Indiana Supreme Court, [petitioner] procedurally defaulted that claim.").

In any event, trial counsel was not ineffective, because a prosecutor may "argue reasonable inferences from the evidence that the jury has seen and heard." *Evans v. Jones*, 996 F.3d 766, 775 (7th Cir. 2021) (quoting *United States v. Waldemer*, 50 F.3d 1379, 1383 (7th Cir. 1995)). The State's suggestion was a permissible inference from the evidence that Labon knew that Grzeca represented Weeks—a defendant on trial for attempting to murder Labon—and that Grzeca normally kept his clients informed of his interviews. There was no error, much less prejudicial error, on the part of Weeks's counsel for failure to object at trial to the statement or raise it in a posttrial motion, and, accordingly, no error in appellate counsel's failure to argue the issue. *See Warren*, 712 F.3d at 1105–06. Thus, Weeks is not excused from procedurally defaulting his claim.

## C.  Trial Court Error in Admitting Merchant's Grand Jury Testimony

Weeks claims the trial court erred in allowing Merchant to testify that he had identified Weeks as the shooter to the grand jury, because doing so unfairly bolstered

Merchant's credibility. The state appellate court held that Weeks forfeited this claim by failing to raise it in his motion for a new trial, again in violation of Rule 615. This Court agrees and concludes that Weeks procedurally defaulted this claim. *See Miranda*, 394 F.3d at 997; *U.S. ex rel. Curtis v. McCann*, No. 07 C 489, 2007 WL 9734186, at *6–7 (N.D. Ill. Oct. 1, 2007) (petitioner defaulted claim that trial court improperly admitted prior consistent statement that allegedly bolstered witness's credibility where petitioner failed to object to the testimony or raise it in a posttrial motion).[7] Because Weeks makes no showing of cause and prejudice or actual innocence to excuse the default, his claim concerning Merchant's grand jury statement also fails.

## D. Cumulative Error Claim

In addition, Weeks claims that the cumulative effect of the alleged errors deprived him of a fair trial in violation of his due process rights. A habeas petitioner claiming cumulative error must show that (1) "at least two errors were committed in the course of the trial," and (2) "considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Chavez*, 12 F.4th at 732 (quoting *United States v. Marchan*, 935 F.3d 540, 549 (7th Cir. 2019)). "[I]f there was no error, or just a single error,

---

[7]     Weeks asserts that he sufficiently preserved the issue by objecting to the prosecutor's initial question about whether Merchant had appeared before the grand jury, but the state appellate court concluded that he forfeited the issue by not raising it in his post-trial motion. *See Weeks*, 2011 WL 10068613, at *6 (citing *People v. Enoch*, 522 N.E.2d 1124, 1130 (Ill. 1988) ("*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (emphasis in original))). This application of Illinois law falls beyond this Court's review. *See Powell*, 4 F.4th at 548.

there are no ill effects to accumulate." *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000). Furthermore, "courts will consider only plain errors or errors which were preserved for appellate review." *Id.*

Here, according to the postconviction trial court, only one error occurred at trial—counsel's failure to object to Kline's written statement as an inadmissible prior inconsistent statement. But, as explained above, the postconviction court reasonably concluded that no prejudice flowed from that error. In any event, with fewer than two errors at trial, no cumulative error exists here.

For all of the reasons explained, Week's petition for habeas corpus is denied.

## E.   Notice of Appeal Rights and Certificate of Appealability

Lastly, the Court declines to issue a certificate of appealability. The Court concludes that Weeks cannot make a substantial showing of the denial of a constitutional right because reasonable jurists would not debate, much less disagree with, this Court's resolution of Weeks's claims. *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing 28 U.S.C. § 2253(c)(2)); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[8]

---

[8]     Weeks is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal in this Court within thirty days of entry of the judgment. *See* FED. R. APP. P. 4(a)(1). He does not need to file a motion to reconsider this Court's ruling to preserve his appellate rights. But if he wants this Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). The deadline for filing a Rule 59(e) motion is twenty-eight days after entry of this judgment. *See* FED. R. CIV. P. 59(e). If Weeks timely files a Rule 59(e) motion, the thirty-day period for filing an appeal is suspended (does not begin to run) until entry of the Court's ruling on the motion. *See* FED. R. APP. P. 4(a)(4)(A)(iv). The rules are different for a Rule 60(b) motion. The deadline for filing a Rule 60(b) motion is "within a reasonable time," and, if Weeks files a motion under Rule 60(b)(1), (2), or (3), he must file it no more than one year after entry of the judgment. *See* FED. R. CIV. P. 60(c)(1). If Weeks files a Rule 60(b) motion within twenty-eight days of entry of the judgment, the thirty-day period for filing an appeal is suspended

## IV.    <u>Conclusion</u>

For the foregoing reasons, the Court denies Weeks's petition for a writ of habeas corpus and declines to issue a certificate of appealability.

The Clerk is instructed to change the name of Respondent to David Gomez, the current Warden of Stateville Correctional Center, and enter judgment in favor of Respondent.  Civil case terminated.

**IT IS SO ORDERED.**                    **ENTERED:  9/1/22**

_____
**John Z. Lee**
**United States District Judge**

---

(does not begin to run) until entry of the Court's ruling on the motion.  *See* FED. R. APP. P. 4(a)(4)(A)(vi).  The deadline for filing a motion under either Rule 59(e) or 60(b) cannot be extended.  *See* FED. R. CIV. P. 6(b)(2).